[No. 6481.]

THE PEOPLE EX REL. BRYANT V. YOUNGS ET AL.

1. Elections—City and County of Denver—Election Commission —Appointment of Judges.

Section 174 of the charter of the city of Denver provides that each member of the election commission shall have the right to appoint one of the three election judges in each precinct, pro-

vided that one of the said judges shall be of different political faith from either of the other two, and that the conduct of elections and all matters pertaining thereto in the city shall be exercised by the election commissioners; and chapter 174, Sess. Laws 1907, known as the "Booth act," was expressly made applicable to municipal elections in the city of Denver. Relator, an election commissioner, not being in the city at the time of appointing judges, the other two members of the commission appointed a judge in each precinct for themselves, and appointed a third list of judges for relator, and certificates were issued to such three sets of appointees as the legal election officers, and relator, thereafter returning, claimed that he had the exclusive right to appoint one judge for each precinct. Held, that respondents having made appointments under the provisions of the city charter, therefore cannot now be heard to say either individually or as a body that relator must act under the Booth act.—P. 340.

2.   Same—Power of Appointment in Each Commissioner.

Section 174 of the charter of the city of Denver provides that each member of the election commission shall have the right to appoint one of the three election judges, that one judge shall be of different political faith from either of the other two, and that the management of the registration, etc., and all matters pertaining to elections, shall be vested exclusively in the commission. Held, that the power of appointment does not reside in the commission as a body or any majority thereof, but each member has the absolute right to appoint one election judge; and, although such appointment may not be final or conclusive upon the party organization of such member, it is not subject to review by either or both of the other members of the commission, whether acting individually or as a board.—P. 341.

3.   Same — Appointment of Judges from Opposing Party — Who May Object.

The fact that a member of the election commission appointed election judges from the opposing party, cannot be objected to by the other commissioners, since they have no power to supervise or direct the appointment made by such member.—P. 342.

4.   Same—Delay in Making Appointments—Effect.

Section 174 of the charter of the city of Denver provides that each member of the election commission shall appoint one of the three election judges in each precinct, that one of the judges shall be of different political faith from either of the other two, and that the commission shall have entire control of elections. While relator, one of the commissioners, was away from the city, the other commissioners appointed judges for him as well as

themselves; and, on his return five days before the election, relator appointed an election judge for each precinct as provided by the statutes, which appointments the board refused to confirm. Held, that relator's appointees should be confirmed, and the appointments made on his behalf by the other two commissioners annulled, as relator's appointments were made in ample time for a full registration of voters, if certified when made, and such certification would not interfere with a fair and honest election; and thus, since relator represented the electors in appointing the judges, not acting merely in an individual capacity, his delay in appointing judges should not prejudice the interest of his constituents.—P. 343.

5. **Mandamus—City and County of Denver—Election Commission —Official Action—Certification of Appointees.**

Section 174 of the charter of the city of Denver provides that each member of the election commission shall appoint one of three election judges, that the commission shall have complete control of the election, and that the action of the commission on all questions passed on by it shall be final. Held, that the making of a certificate by the president and secretary of the commission for election judges duly appointed is purely ministerial, they having no discretion; that, when a list of appointments of judges by any member of the commission is made and presented to them, neither they nor the majority of the board, acting as a body or individually, may refuse to certify the appointments; and that, upon their refusal to certify any appointments duly made, they may be compelled by mandamus to do so.—P. 344.

*Error to the District Court of the City and County of Denver.*

*Hon. George W. Allen, Judge.*

Mandamus by the people of the state of Colorado, on the relation of William H. Bryant, an election commissioner, against Henry Youngs and others, to compel the certification of election judges appointed by relator. From a judgment dismissing the action and refusing the writ, relator brings error.

*Reversed, and the writ issued to compel respondents to perform the required acts.*

Mr. T. J. O'Donnell, Mr. John A. Rush, Mr. Edwin Van Cise, and Mr. Wm. H. Bryant, for plaintiff in error.

Mr. H. A. Lindsley and Mr. Thos. R. Woodrow, for defendants in error.

Mr. Justice Campbell delivered the opinion of the court:

This writ of error is to a judgment of the district court dismissing an action in mandamus. Under the pleadings the issues are of law purely, and were so treated by the trial court and counsel for both parties. The controversy arose out of these facts: The charter of the city of Denver created an election commission consisting of three members, to which are entrusted general control and supervision of municipal elections. In preparing for the approaching general city election, to be held May 19th, 1908, Henry Youngs and George N. Ordway, two of the members, in the absence from the state of William H. Bryant, the third member of the commission, called a meeting of that body for March 18th, of which Bryant had notice, to arrange for the appointment of three judges and two registrars of election in each of the precincts of the city. Bryant at once notified them of his inability to be in Denver until March 27th. The meeting called for the 18th was then adjourned from time to time until the 21st of March, when Youngs and Ordway, each in his individual capacity as a member of the commission, appointed a separate list of judges and registrars for the various precincts; and, because of Bryant's absence, and since the registration of electors must begin on April 4th, which, under the law as they conceived it to be, necessitated the immediate appointment of all judges and registrars, the two members

present sitting as a commission, thereupon proceeded to act and appointed, in behalf of Bryant, a third list of judges and registrars for every precinct in the city; and, afterwards, in pursuance of the rules and regulations of the board, which required such certification to enable the appointees to act, caused its president and secretary to issue their certificates of appointment of the three lists so made as the legal election officers for the ensuing election. On March 27th, Bryant returned to Denver and, on the following day, disclaiming the power of the commission as a body, and of his comembers, or either of them, individually to appoint for him a list of judges and registrars, and repudiating their act in attempting to do so, in his own behalf, as a member of the commission, appointed a third list and asked the president and secretary to certify the same. These officers refused to make the certificate and the board as a board refused to rescind their action in appointing the list for Bryant, and declined to accept or recognize his list of appointments; whereupon Bryant brought this action in mandamus to compel the president and secretary of the board to certify to the list of election officers appointed by him.

The district court being of opinion that under the provisions of the charter of the city of Denver the commission as a body, and not as individuals, possessed the power to appoint judges and registrars and had full control over municipal elections, held that the foregoing action of the board was final and conclusive and not subject to review by the courts, and accordingly dismissed the action.

The important ultimate question on this review is: Did Bryant, under the foregoing facts, at the time he acted, have the power to appoint judges and registrars of election? Or, stated in another form: Did the other two members, as a majority of the

board or individually, have the right and power to appoint a list in Bryant's behalf? The section of the charter of the city pertaining to the appointment of judges of election is section 174, and reads:

"Each member of said commission shall have the right and power, and it shall be his duty, to appoint annually one of the three election judges in each precinct; Provided, however, that one of said judges shall be of different political faith from either of the other two; all of whom shall be qualified electors of the precinct. * * * The conduct, management and control of the registration of voters, and of the holding of elections, canvassing the returns thereof and issuing certificates of election, and of all other matters pertaining to elections in the city and county, shall be vested exclusively in and exercised by the election commission, which shall perform all the duties, joint, several or otherwise, of the city and county officers or employees, required to be done by the constitution or by general law in relation thereto, and the action of the commission on all questions passed upon by it shall be final."

In 1907 the general assembly of the state passed what is commonly called the Booth act (Session Laws 1907, p. 374), concerning elections, and it was expressly made applicable to municipal elections in the city of Denver. It is unnecessary to reproduce its provisions. Counsel for respondents say that it provides a method of selecting or designating the judges and registrars to be appointed by the election commission different from that of the charter, and is the paramount law and must prevail over the latter. If that be true, it is entirely clear that respondents are not in a position to raise any such question in these proceedings, and we, therefore, decline to enter upon an inquiry, or express an opinion, as to whether the charter or the Booth act, in case of conflict, governs

in municipal elections in Denver. That respondents cannot inject this question will readily appear upon a moment's reflection. In the absence of Bryant from the state, who was elected on the municipal ownership ticket, Youngs and Ordway, representatives, and elected on the ticket of the Republican party, and constituting the majority members of the commission, doubtless acting under legal advice, concluded that they must obey the charter and ignore the Booth law, and each for himself appointed a separate list of judges and registrars of election for every precinct of the city, in accordance with the foregoing provision of the charter on that subject. Having done so, they cannot now, as a body or individually, be heard to say that Bryant, the third member, must follow the Booth law and not the charter under which they, themselves, acted. Respondents still claim as legal the lists of judges and registrars which they appointed under the charter, while they insist that Bryant shall make his selection under the Booth act. They are estopped by their conduct to make such contention. Whether in case a member of the commission betrays his party, is faithless to his trust, derelict in duty, or refuses or neglects to act, his action may, at the instance of his party organization or its members, be reviewed and controlled by the court, or for his nonaction appropriate relief may be given, is not involved here and we are not required to express our views upon it.

The solution of the controversy between these parties, therefore—and that is the only question with which we are now concerned—depends on the meaning of the foregoing section, 174. That meaning is not difficult to discover. The language is unambiguous; it interprets itself. The trial court construing the section as a whole, held that, while each member might nominate or suggest to the commission one of

these judges, the power of appointment resides in
the commission as a body, and that a majority of the
board might reject the nominations of the minority
and select other names in lieu thereof; and such
action on their part is final and conclusive on the
courts.  Such construction is manifestly wrong.  To
justify it certain words in the statute of well defined
meaning must be stricken out and other words of dif-
ferent meaning inserted.  Just what powers this sec-
tion vests in the commission as a body we are not re-
quired to say; but it is entirely clear that in the ap-
pointment of election judges, so far as concerns the
other members, each member has the absolute power
and right to appoint one election judge in each pre-
cinct, and this power, when exercised, though it may
not be final or conclusive upon the party organiza-
tion of that member, or upon the general body of
qualified electors, is not subject to review or correc-
tion in any particular by either or both of the other
members of the commission, whether they act indi-
vidually or as a board.  The specific appointing
power delegated to each member by the opening sen-
tence of the section is in no wise affected or limited
by the investiture in the commission of general man-
agement and control of the registration of voters and
general conduct of elections contained in the conclud-
ing sentence.  It is matter of common knowledge
that this section was put in the charter for the pur-
pose of securing an honest election and, so far as
possible, preventing frauds therein by having repre-
sentatives of the different political organizations on
the boards of election and registry.  But this pur-
pose might be entirely defeated if the decision of the
trial court is right.  The composition of the present
board affords a good illustration of the practical
workings which this decision would allow.  Two of
the members were elected by the Republican party;

one on the Municipal ownership ticket. If the list of judges appointed by the latter may for any reason be rejected by the majority and another list selected by them appointed, then the Republican party, through its representatives on the board, could fill every registry and election board in every precinct with members of its own political faith.

It is only fair, however, to say that in the present case there was no such abuse of power. And this naturally leads to a consideration of another objection interposed by the Republican majority of the commission, which is that Bryant appointed some members of the Republican party instead of taking all of his appointees from the list furnished by the Democratic organization, the leading opponent of the Republican party. This objection of the majority that the minority selected for judges members of the majority party is not one on which respondents can be heard, though it exhibits a political altruism as rare as it is commendable. It is not the prerogative of the respondents, as the representatives of the Republican party on this board, to correct or supervise the action of the minority member performed in obedience to the law. Moreover, Bryant was not elected on the Democratic, but on the Municipal Ownership ticket, and if his party constituents are dissatisfied with his action in the selection of judges, it is for them, not respondents, to present their grievance to the courts for redress. The meaning which we give this section accords with the plain intent of its framers, and, if followed, will tend to the suppression of frauds and the securing of a fair and honest election.

Bryant, therefore, having, as against these respondents, the absolute right and power to appoint one judge in each precinct, the question remains whether at the time he filed the list, so soon before

April 4th, when, under the statute, the registration of electors is to begin, the court should virtually annul the appointments made by respondents by compelling the president and secretary of the board to certify his list.

If Bryant was acting solely in an individual capacity and not as the representative of qualified electors on whose ticket he was elected, or if an award of the relief asked would materially interfere with the registration or the conduct of the election, his absence at a time when his associates met and made their appointments might have some influence on our decision; but he is by the statute expressly recognized as a representative of others whose rights should be protected, if that can be done without prejudice to an orderly conduct of the election. His remissness, if any, not being prejudicial in the respect noted, should not operate to the injury of his constituents or to defeat the chief object of the statute in distributing the power of appointment among the different members of the commission. Then, too, no particular time for the appointment of judges is fixed by the charter, the direction being merely that it should be done annually. If, however, such time is in effect designated—to be determined by a computation from, or by analogy to, other kindred provisions of the law—it is not altogether clear that respondents brought themselves within the provisions which they now insist shall be enforced against relator. In a late decision by this court— *People ex rel. Johnson v. Earl*, 42 Colo. 238—it was held that similar provisions in an election law as to the time election officers shall perform their duty were directory, and a failure on their part strictly to observe such directions did not, in the circumstances of that case, which are in principle similar to the facts here, invalidate an election. While elec-

tion officers should comply with directory provisions of the statute, and while this court is not disposed to overlook willful omissions or evasions of duty on their part, we think that, under the facts here, Bryant's appointments should have been certified by the president and secretary of the board, as they were made in ample time, had the proper certificate been issued, to enable his appointees to begin the work of registration at the time fixed by law. If that work is to be delayed for one or two days beyond the time fixed by statute, it is the result of the conduct of the respondents themselves in withholding the certificate, and the court will not now look with favor upon their objection that Bryant's dilatory action should divest him of an absolute right which the statute gives him. On the contrary, we do not think his delay has the effect claimed. There is still ample time for a full registration of voters and an order now entered for the certification of Bryant's appointees will not in any way interfere with a fair and honest election.

We note, but shall not discuss, the point made by respondents touching the right of relator to this remedy. The existence of the right is too plain for argument. The making of the certificate by the president and secretary is purely ministerial, they having no discretion in the premises. When a list of appointments of judges by any one member of the commission is duly made and presented to these officers, as the rules require, neither they, nor the majority of the board acting as a body or individually, may refuse to certify the same; since in the exercise of this power each member of the commission is independent and not subject to control by the others.

The judgment is, therefore, reversed, and the president and secretary of the commission are in-

structed to certify, as the rules of the commission require, the list of judges made out by Bryant.

*Reversed.*

Decision *en banc,* all the judges concurring except MAXWELL, J., who did not hear the arguments or participate, and GABBERT, J., who dissents.

Mr. JUSTICE GABBERT, dissenting:

I do not disagree with the construction given the charter provision under consideration, but, in my opinion, in the circumstances of this case, that construction is not involved.

Mr. Bryant had notice of the meeting at which the appointments were made, but did not attend. The appointees he now seeks to displace are of different political faith from the others appointed by Messrs. Ordway and Youngs. In this respect the charter provision has been complied with in letter and spirit. There is no suggestion of fraud or bad faith in making the appointments. They were made at the proper time. For these reasons, Mr. Bryant should not be permitted to undo the work of his associates in any respect, and in my opinion the judgment of the district court should be affirmed.